IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOPE HUERTA, as next friend
and parent of Blanca M. Valdez-
Huerta, a minor,

      Plaintiff/Counter Defendant,

vs.                                                      CIVIL NO.  09-485 RHS/LFG

BIOSCRIP PHARMACY SERVICES,
INC., and DOES 1-25,

      Defendants/Counter Claimants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO COMPEL

THIS MATTER is before the Court on Defendant Bioscrip Pharmacy Services, Inc.'s ("Bioscrip") Motion to Compel Deposition Exhibit and Discovery Responses to Defendant's Interrogatory No. 16 and Request for Production No. 2 [Doc. 103]. The Court considered the motion, response in opposition [Doc. 124], and reply [Doc. 127]. Oral argument is not necessary.

In her Amended Complaint for strict liability, negligence, negligent misrepresentation, deceptive trade practices, breach of express warranty, and breach of implied warranty in violation of the New Mexico Food, Drug, Alcohol and Cosmetic Act, Plaintiff Hope Huerta ("Huerta") alleges that Bioscrip placed sub-potent Tacrolimus suspension medication into the stream of commerce [Doc. 27] and that "testing revealed the medication provided by Bioscrip and manufactured by Astellas was sub-potent, containing only roughly 11% of the expected concentration of the active ingredient necessary to make it effective." [Doc. 27, p. 3, ¶ 11]. It was the sub-potent formulation of Tacrolimus that allegedly caused Blanca Valdez-Huerta's rejection of a transplanted kidney.

During the course of discovery, Bioscrip served interrogatories requesting information on the allegation that "testing revealed the medication provided . . . [contained] only roughly 11% of the expected concentration of the active ingredient . . . ."  Huerta claimed that her experts would provide information, but their expert reports failed to do so.

Bioscrip's December 17, 2009 interrogatories and requests for production required that Huerta describe all evidence in her possession in support of her allegations in paragraph 11 of her Amended Complaint, and produce any and all documents in her possession that support the allegation.

Huerta now contends that "the testing was done in anticipation of litigation and; thus, any test results are protected from discovery pursuant to the attorney work-product doctrine." [Doc. 124, Response, p. 1].  Huerta declines to answer the interrogatories or produce requested documents, citing work-product protection.

## **Analysis**

The work-product protection doctrine "arises from a common assumption–that a lawyer cannot provide full and adequate representation unless certain matters are kept beyond the knowledge of adversaries."  Sara Epstein, "The Attorney-Client Privilege and the Work-Product Doctrine," ABA Section of Litigation, 3d ed., p. 287.  The work-product doctrine is rooted in common sense.  To provide effective representation of a client, the attorney's analysis and mental impressions about the claim or case itself are entitled to be protected.  Indeed, the seminal case, Hickman v. Taylor, 329 U.S. 495 (1947), decided years prior to the 1993 modifications to the Federal Rules of Civil Procedure, outlines the Supreme Court's assessment of work product.

> A lawyer, as an officer of the court, is bound to work for the advancement of justice while faithfully protecting the rightful interests of his or her clients. In performing various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that the lawyer assemble information, sift what the lawyer considers to be the relevant from the irrelevant facts, prepare legal theories, and plan strategies without undue and needless interference. That is the historical and necessary way in which lawyers act, within the framework of our system of jurisprudence, to promote justice and to protect their client's interest.

Hickman, 329 U.S. at 510-11.

The protections afforded by the Supreme Court in Hickman have been adopted by the amended Rules of Civil Procedure. For example, under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

In 1993, in the first major revisions of the Federal Rules of Civil Procedure, the Rules Committee made sweeping changes in the area of automatic disclosures under Fed. R. Civ. P. 26. The Rules Committee, for example, recognized that there were two kinds of experts: those who would testify at trial and whose opinion and the basis for the opinion were fully discoverable; and those who were employed only as consultants or for trial preparation and who would not offer any opinion testimony. Rule 26(b)(4)(B) provides:

> Ordinarily, a party may not, by interrogatories or deposition, discovery facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Under 26(b)(4)(B), had Huerta's counsel secured a consultant for the purposes outlined in Hickman, i.e., sifting the relevant from the irrelevant and preparing theories and strategies, etc.,

then, that consultant's information would, indeed, be privileged and therefore, not discoverable. But that is not what occurred.

Huerta's theory from the inception of this case is that Bioscrip was negligent in its formulation of the medication because the medication supplied had only 11% potency of the active ingredient, as verified by Huerta's testing. This allegation, which is key to Huerta's theory, and appeared in her original amended complaints, forms the very basis of her claim against Bioscrip. This information was not obtained from a consulting expert to simply help Huerta's counsel "sift through information and separate the relevant from the irrelevant." Indeed, what could be more relevant than evidence that supports Huerta's claim that the medication formulated by Bioscrip was improperly formulated so that only 11% of the active ingredient was contained in the formulated medication? This is, after all, the basis of her claim that Blanca Valdez-Huerta rejected a transplanted kidney.

## **Discovery of Underlying Facts**

"Courts have long recognized a difference between fact work product and opinion work product." Johnson v. Gmeinder, 191 F.R.D. 638, 644 n.4 (D. Kan. 2000) (*citing* Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 704 n. 12 (10th Cir. 1998). While "opinion work product" reflects an attorney's mental impressions, conclusions, opinion or legal theories, "fact work product" is all other work product. Id. (internal citations omitted).

Here, Bioscrip seeks fact work product. The fact appears in paragraph 11 of the Amended Complaint, "testing revealed that medication supplied by Bioscrip and manufactured by Astellas was sub-potent, containing only roughly 11% of the expected concentration of the active ingredient necessary to make it effective."

> The overwhelming majority of courts are in agreement that the disclosure of fact work product to a testifying expert, in conjunction with the expert's consideration of those materials, results in waiver of the work product immunity. *See* B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc., 171 F.R.D. 57, 62 (S.D.N.Y.1997) ("[T]the consensus among federal courts since the 1970 Amendment [to Fed.R.Civ.P. 26] had already been in favor of disclosure of factual information.") and cases cited therein; Barna v. United States, No. 95 C 6552, 1997 WL 417847 (N.D.Ill. July 28, 1997) (even prior to the 1993 amendments, courts "routinely held" that fact work product was discoverable) and cases cited therein.

Id. at 645.

Since Bioscrip's interrogatories do not seek the mental impressions of counsel, but, rather, the underlying facts, even if the information was obtained through a non-testifying consultant, the underlying facts themselves are discoverable. *See, e.g.,* Epstein, "The Attorney-Client Privilege and Work-Product Doctrine," p. 302 (discussing that underlying facts are not protected from discovery).

### **Waiver**

Moreover, even where the law recognizes attorney work-protection, it is clear that such protection can be waived.

> Although not all disclosures of work product result in a waiver as to other parties, disclosure to an adversary always does.  Because the protection is designed to prevent discovery of a lawyer's trial preparation and mental process at the behest of an adversary, voluntary disclosure to an adversary would almost invariably be seen as total waiver.

Epstein, "The Attorney-Client Privilege and Work-Product Doctrine," p. 405.

Because Huerta relied on the allegation concerning test results showing an improper formulation of the medication, she provided her adversary Bioscrip with the very accusation that its negligence in the formulation of this medication resulted in the damages claimed.  Her lawsuit specifically asserts the basis of her claim and represents that Huerta has test results confirming that

5

the formulation of the medication was only 11% percent. "[W]hen a party relies on work product as a basis for a claim or defense, the protection is waived." If this information/allegation was initially work product protected, it could not and should not have been disclosed to Huerta's adversary in the complaints.

Huerta apparently now seeks to modify her theory and claim for relief, contending that she is withdrawing her allegation in paragraph 11 of her Amended Complaint. *See* Doc. 103, Motion, p. 4, ¶ 15. Presently, there is no withdrawal of the allegation before the Court, nor did Huerta seek leave to file another amended complaint withdrawing these allegations. However, even if she did, she may not now protect the information being sought.

When a plaintiff seeks substantial damages for a condition and places that condition "at issue," an opposing party may seek discovery on the condition and its causes, as those are relevant to the party's claim or to the defendant's defenses. Fed. R. Civ. P. 26. In contrast, a request for information that has no conceivable bearing on the claims and defenses, will usually be disallowed. Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 925-26 (8th Cir. 1999); Garrett v. Sprint PCS, 2002 WL 181364 at *1 (D. Kan. Jan. 31, 2002).

While Huerta may seek to switch theories now that Bioscrip asks for chapter and verse support of her allegations, she cannot avoid her discovery obligations. By having placed her child's medical condition at issue and asserting a particular cause for that condition, the sub-potent Tacrolimus, she may not avoid answering questions that seek support for the allegations asserted.

In this regard, Huerta's situation is similar to what occurred in Pugach v. State of New Mexico et al., CIV 99-559 JP/LFG, Doc. No. 41, slip. op. at *2 (D.N.M. Dec. 22, 1999), a case in which I permitted defendants to conduct a Rule 35 examination of the plaintiff. Pugach originally asserted a claim for severe emotional distress and anticipated presenting expert medical testimony

in support of her claim.  However, once defendants sought to conduct a Rule 35 evaluation, Pugach changed her trial strategy and asserted she would no longer seek damages for significant emotional injury nor would she call expert witnesses.  Instead, she said her damages were really on "garden variety" instead of the more serious claims asserted in her complaint and, therefore, under <u>Thiessen v. General Electric Capital Corp</u>, 178 F.R.D. 568 (D. Kan. 1998), a Rule 35 should not be required (garden variety emotional distress claims are described as an attempt to recover for "generalized insult, hurt feelings and lingering resentment" and do not entitle a defendant to an intrusive Rule 35 evaluation).

I concluded it would be unfair to preclude defendants from exploring plaintiff's original theories and supporting evidence, even if Pugach changed her mind about the claims.  The information sought was relevant to the claims originally asserted and was relevant to Pugach's credibility for asserting claims she subsequently contended no longer existed.

In sum, the Court rejects Huerta's claim of attorney work product and requires that she fully respond to Bioscrip's Interrogatory No. 16 and Request for Production No. 2.  The response to the Interrogatory and the documents responsive to the Request for Production are due within ten days after entry of this Order.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge