IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOPE HUERTA as Next Friend and Parent
of BLANCA M. VALDEZ-HUERTA, a
minor,

      Plaintiffs,

vs.                                                                     Civ. No. 09-485 RHS/LFG

BIOSCRIP PHARMACY SERVICES, INC.,
and DOES 1-25,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant BioScrip Pharmacy Services, Inc.'s *Motion to Dismiss*, filed May 5, 2010 [Doc. 169], brought pursuant to FED. R. CIV. P. 12(b)(6). Having the considered the parties' submissions and the record, the Court will deny the motion and will permit the filing of the Plaintiffs' Third Amended Complaint.

A complaint should be dismissed for failure to state a claim under Rule 12(b)(6)

> if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.' " *Macarthur v. San Juan County*, 497 F.3d 1057, 2007 WL 2045456, at *5, 2007 U.S.App. LEXIS 17008, at *16 (10th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007)).

*Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009).

> "[T]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under Rule 8(a)(2). *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted), *cert. denied*, --- S.Ct. ----, 2010 WL 154973 (U.S. Jan. 19, 2010) (No. 09-549). . . .
>
> \* \* \* \*
>
> . . ."[G]ranting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178 (quotation marks and citation omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).
>
> \* \* \* \*
>
> Following *Twombly*, we determined that "plausibility," as used by the Supreme Court, referred to the scope of the allegations in a complaint, and "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (quotation marks and citation omitted).

*Phillips v. Bell*, No. 08-1420, 365 Fed. App'x 133, 137-39, 2010 WL 517629, \*3-\*5 (10th Cir. Feb. 12, 2010).

**I. Count I - Strict Products Liability**.

The Second Amended Complaint alleges that Valdez-Huerta's kidney-transplant rejection was "thought to be related to insufficient concentration of" Tacrolimus, an anti-rejection drug manufactured by Astellas Pharma US, Inc. Doc. 166 at 3, ¶¶ 7-11. It alleges that Valdez-Huerta took the Tacrolimus "as prescribed," and challenges the "safety and efficacy of Tacrolimus" as being "subpotent." *Id.* ¶¶ 13-14. "BIOSCRIP dispensed the TACROLIMUS ingested by Ms. Valdez-Huerta. BIOSCRIP concealed to consumers critical information regarding serious flaws with the TACROLIMUS." *Id.* The Complaint alleges that the Tacrolimus that BioScrip dispensed reached Valdez-Huerta "without substantial change in its condition as . . . supplied." Doc. 166 at

6, ¶ 28. The Complaint alleges that the Tacrolimus was unreasonably dangerous because it was defective and because of "Defendants' misrepresentations and inadequate facts disclosed to Plaintiffs," thereby causing "an increased risk of rejection" and an "actual rejection." *Id.* ¶¶ 30-31.

BioScrip contends that the Plaintiffs have not made sufficient allegations to state a claim for strict products liability against it.  BioScrip, however, refers only to selected paragraphs of the Second Amended Complaint that specifically name BioScrip and has failed to consider all of the paragraphs set forth above that include BioScrip as a "Defendant."  The Court concludes that the Second Amended Complaint makes sufficient allegations to state a claim for strict products liability against BioScrip for dispensing a subpotent medication to Valdez-Huerta. *See Garner v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir. 1984) (stating that "the New Mexico Supreme Court adopted the Restatement of Torts, 2nd, § 402A, which provides: 'One who sells any product in a defective condition unreasonably dangerous to the user or a consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user . . .' Moreover, New Mexico has held that the plaintiff in a strict products liability case, had the burden of proving all of the elements, including the following: first, that the product was defective; second, that the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user or consumer; third, that because of the defect the product was unreasonably dangerous to the user or consumer; fourth, the consumer was injured or damaged; and fifth, that the defective product was the proximate cause of the injury or damage."); *Martinez v. Caterpillar, Inc.*,  572 F.3d 1129, 1132 (10th Cir. 2009) (noting that, under New Mexico's strict-products-liability law, "[i]n order for a supplier to be liable, the injury must have been caused by a condition of the product which was not substantially changed from the condition in which the supplier placed the product on the market or in which the supplier could have reasonably expected it to be used.").

**II.  Count II - Negligence and Count III - Negligent misrepresentation**.

Similarly, BioScrip contends that the Second Amended Complaint's "only factual allegation of wrongdoing against BioScrip is that it concealed to consumers critical information regarding serious flaws with the tacrolimus," Doc. 169 at 5, and that the allegations are nothing more than "broad conclusory statements," *id.* at 6.

But the Second Amended Complaint also alleged that the Tacrolimus BioScrip supplied was subpotent, *see* Doc. 166 at 4, ¶ 14; and that the Defendants had a duty to use reasonable care in supplying the Tacrolimus; that they failed "to adequately test and inspect the Tacrolimus" that was dispensed to ensure that it "was safe and proper;" and that they failed to adequately label or to otherwise "adequately and properly warn Plaintiffs of the risks of complications" or of "disease" from Tacrolimus, *see id.* at 7-8, ¶¶ 33-34.  It further alleges that the Defendants misrepresented that the Tacrolimus was "safe and without defect" and "actively concealed adverse information" that "certain lots of Tacrolimus were subpotent and use thereof would result in organ rejection;" that certain lots had not been "fully and adequately tested;" and that the risk of rejection was "much higher with use" of subpotent Tacrolimus.  *Id.* at 9-10, ¶¶ 38-39.  The Second Amended Complaint contends that these negligent acts caused an increased risk of rejection and actual rejection and "constitute an entire want of care" indicating that the acts were willful or wanton or a result of reckless conscious indifference to the Plaintiffs' rights.  *Id.* at 8, ¶¶ 35-36.  The Court concludes that the Plaintiffs have sufficiently stated claims for negligence and negligent misrepresentation.

**III.  Count IV - Violation of the New Mexico Unfair Trade Practices Act ("NMUTPA").**

The Second Amended Complaint alleges that Defendants made representations that the Tacrolimus it dispensed "possessed qualities, characteristics, uses and benefits which it did not possess;" and that the Tacrolimus "was merchantable when in fact, it was not fit for the ordinary

purpose for which" it was to be used, in violation of the NMUTPA. Doc. 166 at 10-11, ¶ 43. BioScrip contends that these allegations are insufficient because they do not state "what untrue representations BioScrip made" about the Tacrolimus or what "qualities, uses, or benefits the tacrolimus dispensed by BioScrip lacked," and that the Complaint fails to allege that the "tacrolimus was not fit for Plaintiff's use." Doc. 169 at 7. But Count IV of the Second Amended Complaint purports to reallege the previously-alleged paragraphs, *see* Doc. 166 at 10, ¶ 42, and the Complaint had previously alleged that the representations and misreprepresentations related to allegedly subpotent lots of Tacrolimus. BioScrip's argument is not well taken.

### IV. Count V - Breach of express warranty and Count VI - Breach of implied warranty.

BioScrip's argument that the Second Amended Complaint fails to state claims for breach of express and implied warranty is similarly founded on its erroneous contention that the Complaint fails to state "what flaws existed; what information was concealed; what . . . warranties were made; or what concealed information constituted a breach of such warranties. Doc. 169 at 8. A fair reading of the Second Amended Complaint shows that these Counts related to the alleged flaws of subpotent medication and to BioScrip's alleged failure to inform the Plaintiffs that several lots of subpotent Tacrolimus had been manufactured and that subpotent amounts could result in transplant rejection.

### V. Punitive Damages.

Although BioScrip contends that there are no allegations that its conduct was sufficiently culpable to warrant the imposition of punitive damages, as noted above, the Complaint belies that contention. *See* Doc. 166 at 8, ¶¶ 35-36. It is too early to dismiss this claim with prejudice, as BioScrip requests.

### VI. Filing a third amended Complaint.

The Court is confused why, when it allowed the Plaintiffs to file a Second Amended Complaint long after Astellas had been voluntarily dismissed as a Defendant, the Plaintiffs failed to remove Astellas as a named Defendant and left in the Second Amended Complaint allegations that were specific only to Astellas.  The Second Amended Complaint is needlessly confusing, and, because there is no prejudice to BioScrip in correcting that confusion, the Court will allow the Plaintiffs to file the Third Amended Complaint attached to the Response to BioScrip's Motion to Dismiss, which corrects the errors without making any new allegations or alleging any new causes of action against BioScrip.

**IT IS ORDERED** that BioScrip's Motion to Dismiss [Doc. 169] is DENIED.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE
PRESIDING BY CONSENT